ROSAIRE G. TARDIFF

*vs.*

HERBERT L. PARKER, SR.

Androscoggin.    Opinion, December 28, 1953.

*Berman & Berman*, for plaintiff.

*William B. Mahoney,*
*Francis C. Rocheleau,*
*James R. Desmond*, for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, JJ. TIRRELL AND WEBBER, JJ., did not sit.

WILLIAMSON, J.    This automobile accident case is before us on general motion after a jury verdict for the plaintiff in the amount of $10,250. The only question for our consideration is whether the damages were excessive. The defendant further urged that in the event damages were held to be excessive, then the case should be returned for new trial on liability as well as damages on the ground that

bias, prejudice or improper influence affecting damages also touched liability. In our view of the case it is not necessary that we consider the second point suggested by the defendant.

The defendant computes the special damages as follows: medical bills $1152.02, automobile and personal property damage $1153, loss of wages 13½ weeks at $113, $1525.50, total $3830.52. The plaintiff places the damages at $81.50 more than the defendant, a difference immaterial for our purposes.

Taking the figures of defendant, the jury allowed $6419.48 for pain and suffering and permanent injuries. It is here that the defendant objects to the verdict. In his brief he submits that an allowance of $3000 in addition to special damages, or a total of not more than $7000, is "the ultimate of a reasonable appraisal of the damages proved in this case."

The plaintiff is a mason doing work described by him as "refractory—checking boilers, lining and setting." At the time of the collision on March 27, 1952, the plaintiff, 33 years of age, received a deep laceration of the head, an injury to the right knee, a fracture of the lower jaw, and a sprained left thumb. He was rendered unconscious by the accident, was hospitalized for four days, and again for a period of some weeks preceding and following an operation upon his knee.

For a period of six weeks, to use the words of the dental surgeon, "the jaws were actually wired jaw to jaw to try to eliminate any motion of the lower jaw." During this period he suffered great discomfort. Thereafter he had some difficulty with his teeth and in October 1952 two teeth were removed and replaced with a denture.

In late April the plaintiff complained of stiffness and pain in his right knee. Complete bed rest and physio-

therapy treatment from April 29 to May 28 in a hospital proved unsuccessful. His surgeon then operated, opening the knee joint and removing the internal semilunar cartilage or "cushion." In the opinion of the surgeon the plaintiff suffers no permanent impairment. The plaintiff says of his condition at the time of the trial in April 1953:

"Q. How is your general health now?

A. Well, it is not too bad except for my knee and the jaw that I got trouble with.

Q. Not too bad except with your knee and your jaw.

A. Knee and jaw.

Q. How about headaches?

A. Well, I have got headaches quite often but take aspirin and stuff."

The principles governing the exercise of the power of the Law Court to set aside verdicts for excessive damages have been discussed and applied in recent cases. See, for example, *Pearson* v. *Hanna*, 145 Me. 379, 17 A. (2nd) 242, 16 A. L. R. (2nd) 1; *Jenkins* v. *Banks*, 148 Me. 276, 92 A. (2nd) 323; *Savoy* v. *Butler*, 149 Me. 7, 97 A. (2nd) 543.

From a careful examination of the record, having particularly in mind the severe injuries to the jaw and knee, we are unable to say that it is "apparent that the jury acted under some bias, prejudice or improper influence, or have made some mistake of fact or law," to quote again the familiar language from *Cayford* v. *Wilbur*, 86 Me. 414, 416, 29 A. 1117, 1118.

*Motion overruled.*